# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| DOUGLAS R. BENNION, | Case No.: 4:10-cv-00139-REB |
| Petitioner, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Respondent. | |

Currently pending before this Court is Douglas R. Bennion's Complaint and Petition for Review (Docket No. 2), seeking review of the Social Security Administration's final decision to deny his claim for disability insurance benefits and Supplemental Security Income. This action is brought pursuant to 42 U.S.C. §§ 205(g), 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I.  ADMINISTRATIVE PROCEEDINGS

Douglas R. Bennion ("Petitioner") applied for disability insurance benefits and Supplemental Security Income on March 27, 2007. He alleged disability, in both applications, beginning January 4, 2004. Petitioner's claims were initially denied on June 18, 2007 and, again, on reconsideration on August 8, 2007. On August 28, 2007, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On February 4, 2009, ALJ Donald R. Jensen held a hearing in Idaho Falls, Idaho, at which time, Petitioner, represented by

**MEMORANDUM DECISION AND ORDER - 1**

attorney Robert K. Beck, appeared and testified.  A vocational expert, Connie Hill, also appeared and testified during the same February 4, 2009 hearing.

On March 25, 2009, the ALJ issued a decision denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act.  Petitioner timely requested review from the Appeals Council on May 22, 2009. On February 17, 2010, the Appeals Council denied petitioner's Request for Review, making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted his administrative remedies, Petitioner timely files the instant action, arguing that "[t]he decision denying the Petitioner's claim is not in accordance with the law and is not supported by substantial evidence."  *See* Compl. and Pet. for Review, p. 2 (Docket No. 1). Specifically, Petitioner questions whether (1) he is able to engage in any substantial gainful activity as a result of his impairments; (2) the ALJ reviewed all relevant medical records as to Petitioner's headaches/neck pain, low back pain, and knee pain; and (3) the Appeals Council actually reviewed the post-hearing/decision records from Stewart Curtis, D.O., M.P.H., and Jay Ellis, P.T.  *See* Pet.'s Mem., p. 9 (Docket No. 12).  Petitioner requests that the Court reverse the ALJ's decision and order payment of benefits or, alternatively, remand the case for proper consideration of the evidence.  *See* Compl. and Pet. for Review, pp. 2-3 (Docket No. 1).

## II.  STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive.  42

**MEMORANDUM DECISION AND ORDER - 2**

U.S.C. § 405(g).  In other words, if there is substantial evidence to support the ALJ's factual

decisions, they must be upheld, even when there is conflicting evidence.  *Hall v. Sec'y of Health,*

*Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971);

*Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human*

*Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The standard requires more than a scintilla but less

than a preponderance (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975);

*Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)), and "does not mean a large or

considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole

to determine whether it contains evidence that would allow a reasonable mind to accept the

conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019.

The ALJ is responsible for determining credibility and resolving conflicts in medical testimony,

*Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel.*

*Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically

flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  Where the

evidence is susceptible to more than one rational interpretation in a disability proceeding, the

reviewing court may not substitute its judgment or interpretation of the record for that of the

ALJ.  *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal

standards and will be reversed for legal error.  *Matney*, 981 F.2d at 1019.  The ALJ's

**MEMORANDUM DECISION AND ORDER - 3**

construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*.  However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## III.  DISCUSSION

### A.    Sequential Processes

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  SGA is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe his physical/mental impairments are and regardless of his age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ found that Petitioner "engaged in SGA in the form of a short summer job that did not end secondary to his opinions."  (AR 102).  However, given the short duration of the work, the ALJ elected to give Petitioner "the benefit of the doubt" and continued to the next step of the

**MEMORANDUM DECISION AND ORDER - 4**

sequential process – effectively determining that Petitioner did not engage in SGA since January 4, 2004, the alleged onset date.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  20 C.F.R. §§ 404.1521, 416.921.  If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Here, the ALJ found that Petitioner had the following severe impairments: (1) right shoulder impairment, status post-surgical repair, and (2) status post-remote left thumb injury.  (AR 102-103).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.  *Id*.  Here, the ALJ concluded that Petitioner's above-listed

**MEMORANDUM DECISION AND ORDER - 5**

impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments.  (AR 103).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.  20 C.F.R. §§ 404.1545, 416.945.  Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  Here, the ALJ determined that Petitioner has the residual functional capacity to perform light work with the following limitations: (1) he can sit for 30 minutes at a time for a total of six hours in an eight-hour workday; (2) he can stand for 20 minutes at a time for a total of six hours in an eight-hour workday; (3) he must be permitted to sit or stand at will; (4) he can only occasionally reach overhead with his right (dominant) arm; and (5) he is unable to close his thumb to make a fist with his left (non-dominant) hand but can close his fingers.  (AR 103-106).  As a consequence, the ALJ determined that Petitioner's past relevant work exceeds his residual functional capacity.  (AR 106).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v),

**MEMORANDUM DECISION AND ORDER - 6**

416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  If the claimant is able to do other work, he is not disabled; if the claimant is unable to do other work and meets the duration requirement, he is disabled.  Here, the ALJ found that, through the date last insured, Petitioner was unable to perform any past relevant work.  (AR 106).  However, considering Petitioner's age, education, work experience, and residual functional capacity, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that he can perform" – for example, office helper, mail clerk, and production assembler.  (AR 106-107).

**B.     Analysis**

As respondent points out, Petitioner's briefing takes the form of a recitation of the facts in the record, followed by arguments that are largely unaccompanied by any legal authority.  *See* Resp.'s Brief, pp. 6-7 (Docket No. 22).  Regardless, Petitioner makes three distinct arguments to this Court – first, the ALJ's disability determination failed to accurately incorporate Petitioner's alleged headaches/neck pain,[1] knee disorder, and back disorder; second, the ALJ did not provide clear and convincing evidence for rejecting his testimony; and third, the Appeals Council did not properly consider Petitioner's post hearing/decision submission of new evidence speaking to his alleged disabilities.  *See* Pet.'s Mem., pp. 9-10 (Docket No. 12).

1.     Petitioner's Alleged Headaches/Neck Pain, Knee Disorder, and Back Disorder

In finding only that Petitioner's right shoulder and left thumb-related injuries constitute severe impairments under the Act, the ALJ necessarily determined that Petitioner's other alleged conditions – headaches/neck pain, knee pain, and back pain – did not rise to the level of severe,

---

[1]  At the February 4, 2009 hearing, Petitioner stated to the ALJ that his neck pain is, for all intents and purposes, associated with his headaches.  (AR 146).

**MEMORANDUM DECISION AND ORDER - 7**

medically determinable impairments.  Indeed, the ALJ specifically found Petitioner's chronic

headaches/neck pain to be "non-medically determinable"; and Petitioner's knee and back

disorders to be "non-severe" in nature.  (AR 103).  Petitioner appears to take issue with these

determinations.

1.  <em>Headaches and Neck Pain</em>

In Social Security Ruling 96-4p ("SSR 99-4p"), the Social Security Administration

explained what is needed to show a medically determinable impairment:

> An "impairment" must result from anatomical, physiological, or
> psychological abnormalities that can be shown by medically
> acceptable clinical and laboratory diagnostic techniques.  Although
> the regulations provide that the existence of a medically determinable
> physical or mental impairment must be established by medical
> evidence consisting of signs, symptoms, and laboratory findings, the
> regulations further provide that under no circumstances may the
> existence of an impairment be established on the basis of symptoms
> alone.  Thus, regardless of how many symptoms an individual
> alleges, or how genuine the individual's complaints may appear to be,
> the existence of a medically determinable physical or mental
> impairment cannot be established in the absence of objective medical
> abnormalities; i.e., medical signs and laboratory findings.
>
> No symptom or combination of symptoms by itself can constitute a
> medically determinable impairment.  In claims in which there are no
> medical signs or laboratory findings to substantiate the existence of
> a medically determinable physical or mental impairment, the
> individual must be found not disabled at step 2 of the sequential
> evaluation process . . . .

SSR 99-4p, pp. 1-2 (footnote omitted).[2]  Therefore, Petitioner can only establish an impairment if

the record includes signs – the results of "medically acceptable clinical diagnostic techniques"

---

[2] SSR 99-4p distinguishes "symptoms" from "signs," noting that "symptoms . . . are an individual's own perception or description of the impact of his or her physical or mental impairment(s) . . . .  However, when any of these manifestations is an anatomical, physiological, or psychological abnormality that can be shown by medically acceptable clinical diagnostic techniques, it represents a medical 'sign' rather than a 'symptom.'" SSR 99-4p at 1 n.2.

**MEMORANDUM DECISION AND ORDER - 8**

(*see supra* at p. 8 n.2) – as well as symptoms.  *See Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005).  With these standards in mind, Petitioner cannot establish that his headaches and neck pain amount to a medically determinable impairment (severe or otherwise).

Simply put, of the medical records available to the ALJ from the time of the February 4, 2009 hearing to his March 25, 2009 decision, none of them definitively speaks to Petitioner's condition since January 4, 2004 – the alleged onset date.  On this point, the ALJ stated:

> Mr. Bennion testified that his worst impairment is that of suffering chronic headaches.  However, none of the medical evidence of record from within that period of alleged disability contains documentation of any complaints of headaches, disabling or otherwise.  Therefore, the ALJ finds Mr. Bennion's headaches to be non-medically determinable.

(AR 103).  Petitioner confirmed as much during the hearing when, in response to the ALJ's questioning, he testified:

| | |
|---|---|
| ALJ: | I want to hear what symptoms you're having.  Tell me about the headaches.  Whether it's caused by something happening in your neck or not is something that a doctor could tell me. |
| PET: | Okay. |
| ALJ: | But not you.  What I want to know is about the headaches.  You're having headaches 24/7. |
| PET: | Right. |
| ALJ: | You have them all the time. |
| PET: | Yes. |
| ALJ: | That never goes away? |
| PET: | I'd have a headache all the time. |
| ALJ: | Did they get worse or better at different times? |

**MEMORANDUM DECISION AND ORDER - 9**

PET:        Yes, they do.

ALJ:        So it varies.

PET:        Yes.

ALJ:        It's there all the time?

PET:        Right.

ALJ:        Okay.  Can you describe for me where the headache is located?

PET:        It starts at the back of my neck and comes right over to my eyes.

ALJ:        When you say it starts, I thought it was there all the time.  What do you mean by it starts at the back of your neck?

PET:        I can feel where the pain is coming, like where it aches –

ALJ:        Uh-huh.

PET:        – is from here around to the top of my head into my eyes.

ALJ:        Okay.  But you say it starts there.  But I thought it was there all the time.  How can it start there if it was always there?

PET:        You can feel where, okay, I don't know what you're –

ALJ:        I'm trying to understand.  I really am.

PET:        It don't start.  I mean, it's just where I can feel the pain in my neck.

ALJ:        So the focus of the pain is at the top of your neck and then –

PET:        From right here –

ALJ:        Uh-huh.

PET:        – up through and into my, up to my forehead.

ALJ:        Okay.  And it seems to be coming from the top of your neck there?

PET:        Yes.

**MEMORANDUM DECISION AND ORDER - 10**

| ALJ: | Okay.  Across the top of your head to your forehead.  And how would you describe the pain?  Is it an aching pain or a burning?  How would you – |
|---|---|
| PET: | It's throbbing. |
| ALJ: | Uh-huh. |
| PET: | Pain all the time. |
| ALJ: | Okay.  And have you seen a doctor for these headaches? |
| PET: | Yes.  I've told them about it, yes. |
| ALJ: | Which doctor have you talked to about it?  Whose doctor's records, or what doctor's records would I go to look at to see what you may have been telling them about the headaches? |
| PET: | I don't think you'd have them because they are out in Nevada. |
| ALJ: | Uh-huh.  Well, have you seen a doctor for it recently, the headache problems? |
| PET: | No, I haven't. |
| ALJ: | How long ago? |
| PET: | Pardon me? |
| ALJ: | How long ago were you seeing a doctor and talking to them about the headaches problems? |
| PET: | When I was in Nevada in 1987 or '88. |
| ALJ: | Not since the late 80s? |
| PET: | No. |
| ALJ: | So there's no medical records that would tell me what the headache problems you've having now with the doctor you're seeing recently for that problem? |
| PET: | I haven't seen one for it. |

(AR 130-133).

**MEMORANDUM DECISION AND ORDER - 11**

Aside from Petitioner's own testimony (discussed at pp. 15-18), the evidence in the record available to the ALJ is not probative, given that it precedes Petitioner's onset date by nearly 20 years. *See Lockwood v. Comm'r Social Sec. Admin.*, 397 Fed. Appx. 288, 290 (9th Cir. 2010) (unpublished) ("The ALJ did not err when she failed to mention in her decision the opinion of Dr. Kaur-Jayaram . . . . Dr. Kaur-Jayaram's opinion that Lockwood suffered from incapacitating back pain and should be given time off and part-time work until her condition was 'sorted out' was not probative because it pre-dated Lockwood's alleged disability onset date by more than eighteen months and pre-dated a successful back surgery."); *Carmickle v. Comm'r Social Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance. . . . . As such, we conclude the ALJ did not err in his treatment of Dr. Nilaver's evidence."); *Burkhart v. Bowen*, 856 F.2d 1335, 1340 n.1 (9th Cir. 1988) ("The ALJ also noted that the only other indication in the record that Burkhart suffered from depression was from early 1981. The ALJ correctly rejected this evidence on the grounds that it is not probative . . . because it is prior to the relevant time period . . . .").

There is substantial evidence in the record to support the ALJ's conclusion that Petitioner's alleged headaches/neck pain constituted a non-medically determinable impairment at step two of the sequential analysis. Accordingly, the action will not be remanded in this respect.

### 2.    Knee Disorder and Back Disorder

An impairment is "not severe" if it has no more than a minimal effect on an individual's physical or mental ability(ies) to do basic work activities. *See* SSR 85-28, p. 3; SSR 96-3p, p. 1; 20 C.F.R. §§ 404.1521(a), 416.921(a); *see also supra* at p. 5. Here, consistent with Petitioner's headaches and neck pain, based upon the record available to him, the ALJ was justified in

**MEMORANDUM DECISION AND ORDER - 12**

concluding that Petitioner's knee and back disorders constituted non-severe impairments at the second stage of the sequential process.

First, the majority of records offered in support of substantiating the allegedly debilitating nature of Petitioner's knee and back pain pre-date Petitioner's onset date.  To be sure, during the hearing, Petitioner testified:

| | |
|---|---|
| ALJ: | When is the last time you saw a doctor for the knee problems? |
| PET: | Early 2000s, Dr. Ring Jones |
| ALJ: | Dr. Jones? |
| PET: | Yes. |
| ATTY: | Some of those records are in the supplemental package that I'm going to index for you. |
| ALJ: | Okay |

.... 

| | |
|---|---|
| ALJ: | . . . .  And you have some low back problems as well? |
| PET: | Yes, I do. |
| ALJ: | Have you seen a doctor for it? |
| PET: | That's also out of Nevada. |
| ALJ: | How long ago was this? |
| PET: | In 1987, 88. |
| ALJ: | Okay.  Any doctors since then that you'd seen for the back? |
| PET: | It could be in some of them records, the early 90s when I first come up here from Nevada, I think I see Dr. McAllen on my lower back. |
| ALJ: | Nothing recently? |

**MEMORANDUM DECISION AND ORDER - 13**

PET:          No.

(AR 142-143).  The temporal lag between the evidence in the record speaking to Petitioner's

knee and back pain, coupled with the absence of such evidence after Petitioner's onset date,

necessarily compromises the legitimacy of any related claim for disability.  *See supra* at pp. 9-

12.

      Second, as to those limited treatment notes in existence following Petitioner's onset date,

the ALJ acknowledged their inclusion in the administrative record, confirming that, in fact,

Petitioner had impairments affecting his knee and back.  (AR 103).  As indicated by the ALJ,

however, these records nonetheless fail to show any corresponding restrictions in Petitioner's

ability to perform *work activities*, particularly when considering, for example, the undisputed

fact that Petitioner regularly enjoyed playing golf, even after alleging disability  *Id.*[3]

      This Court's function is to determine whether the ALJ's conclusion in these respects are

adequately supported by the record.  Because substantial evidence in the record exists to support

the ALJ's conclusion that Petitioner's alleged knee and back disorders constitute non-severe

medical impairments at step two of the sequential analysis, the action will not be remanded in

this respect.

---

    [3]  It should be pointed out, however, that, as to Petitioner's shoulder and thumb
impairments, Jason W. Parker, D.C., N.M.D., opined on December 7, 2005:

> Mr. Bennion will not be able to return to work in construction or as
> a manual labor.  Mr. Bennion will also have issues with overhead
> work as well as pushing and pulling as a result of his functional
> limitations of his shoulders.

(AR 330).  The ALJ found this opinion to be "internally consistent, well supported by medically
acceptable clinical and diagnostic techniques, and consistent with the rest of the medical
evidence."  (AR 106).  In turn, the ALJ likewise found that (1) Petitioner could not perform any
past relevant work (*id.*); and (2) Petitioner could only occasionally reach overhead with his right
(dominant) arm (AR 103).

**MEMORANDUM DECISION AND ORDER - 14**

2.      Petitioner's Credibility

Although acknowledging "problems with current medical records on these conditions" (*see* Pet.'s Mem., p. 10 (Docket No. 12)), Petitioner next takes issue with the ALJ's challenge to his credibility, stating that "the [P]etitioner was merely testifying that he continued to suffer the same pains as he sought medical care for since 1987" (*id.*).

The ALJ is in the best position to make such credibility determinations and, for this reason, the ALJ's credibility determinations are entitled to great weight.  *See Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990).  In evaluating a claimant's credibility, the ALJ may consider a claimant's reputation, inconsistencies either in testimony or between testimony and conduct, daily activities, past work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms.  *See Light v. Social Sec. Admin.*, 119 F.3d 789, 791 (9th Cir. 1997).  In short, "[c]redibility decisions are the province of the ALJ."  *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  Here, the ALJ provided sufficient reasons for calling into question petitioner's credibility.  Still, to reject a claimant's testimony, the ALJ must make specific findings stating clear and convincing reasons for doing so.  *See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

At the administrative hearing, Petitioner testified that his alleged impairments restrict him such that he must lay down two to three times daily for 35-45 minutes (AR 134); lift no more than 20 pounds (AR 140); walk only one-half mile at a time (AR 142); sit only 30-45 minutes at a time (AR 144-145); stand only 20 minutes at a time (AR 143); has only a limited range of motion in his right shoulder (AR 135-140); and has problems gripping and cannot use his left hand to grasp using his left thumb (AR 158).  Notwithstanding this testimony, the ALJ

**MEMORANDUM DECISION AND ORDER - 15**

questioned Petitioner's objectivity when describing his alleged inability to work.  (AR 104)

("After careful consideration of the evidence, the ALJ finds that Mr. Bennion's medically

determinable impairments could reasonably be expected to cause the alleged symptoms;

however, his statements concerning the intensity, persistence, and limiting effects of these

symptoms are not credible to the extent they are inconsistent with the above residual functional

capacity assessment.").

For example, despite Petitioner's alleged physical limitations, the ALJ noted that

Petitioner is apparently able to perform household chores, assist his son with getting ready for

school and homework, attend to his personal hygiene, prepare meals, drive, and regularly played

golf up until the end of 2006.  (AR 104-105) ("If Mr. Bennion were as restricted as he has

alleged, it is unlikely that he would be able to perform all of these activities on a daily basis.");

*see also* (AR 149-155).

Additionally, the ALJ indicated that Petitioner's "biggest problem" – headaches – (AR

129) has consistently been treated with over-the-counter medication.  (AR 129, 134).  According

to the ALJ, "[i]t seems that if [Petitioner] were indeed as restricted as he has alleged, that he

would . . . seek stronger pain relief."  (AR 104); *see also Parra v. Astrue*, 481 F.3d 742, 750-51

(9th Cir. 2007) ("The ALJ also noted that Parra's physical ailments were treated with an over-

the-counter pain medication.  We have previously indicated that evidence of 'conservative

treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.")

(citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)).

Finally, the ALJ called attention to the conflicting medical evidence, where Reed I.

Ward, D.O., P.A., a treating physician, stated that Petitioner could return to work with limited

**MEMORANDUM DECISION AND ORDER - 16**

ability to lift or otherwise use his right upper extremity.  (AR 105) (citing (AR 935, 937, 939, 941)).[4]  Moreover, the ALJ appropriately mentioned that Charles Boge, M.D., an examining physician, observed the following:

> A concluding statement based on medical findings of the claimant's ability to do work as sitting is unrestricted, standing and walking is unrestricted.  Lifting and carrying appear to have no restriction except for limited range of motion actively.  He did not permit passive range of motion examination.  This individual is extremely well muscled and I believe that he could carry out most activities with regards to the right shoulder.  There does not appear to be any difficulty with regards to handling objects such as buttons or shoe laces.  There is no difficulty with regards to hearing, speaking, or traveling.

(AR 105) (citing (AR 340)).  In short, neither Dr. Ward nor Dr. Boge suggest that Petitioner is as altogether incapable of working as Petitioner claims to be.

These reasons offer clear and convincing explanations as to why the ALJ did not find Petitioner entirely credible.  The ALJ's conclusion, while potentially at odds with another's interpretation of that same evidence, is nonetheless supported by substantial evidence in the record.  As required by controlling law, the ALJ will not be second-guessed here.  *See Batson v. Comm'r of Social Sec. Admin.* 359 F.3d 1190, 1193 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision.").

---

[4]  Presumably at Petitioner's counsel's direction, on or around January 24, 2006, Dr. Ward reviewed the December 7, 2005 medical evaluation performed by Dr. Parker (*see, e.g.*, *supra* at p. 14 n.3) and, at that time, commented that Petitioner's shoulder injuries "are going to represent a chronic problem for him and are clearly going to limit his activities and ability to work, especially with regards to work where use of the upper extremities is required."  (AR 930).  Again, as with Dr. Parker's opinions, Dr. Ward's latest opinion is not inconsistent with the ALJ's ultimate determinations.  *See supra* at p. 14 n. 3.

**MEMORANDUM DECISION AND ORDER - 17**

3.      Newly-Submitted Evidence to the Appeals Council

Following the February 4, 2009 hearing and the ALJ's March 25, 2009 decision denying

Petitioner's claims, Petitioner submitted new evidence to the Appeals Council as part of his

formal Request for Review, specifically (1) a Functional Capacity Evaluation ("FCE") from Jay

Ellis, P.T., and (2) an Independent Medical Evaluation/Opinion ("IME") from Stewart Curtis,

D.O., M.P.H.  (AR 4-45).  Still, on February 17, 2010, the Appeals Council denied Petitioner's

Request for Review.  (AR 1-3).  Petitioner questions whether the Appeals Council actually

reviewed these newly-submitted materials.  *See* Pet.'s Mem., p. 9 (Docket No. 12).  In response,

Respondent argues that the Appeals Council's denial of review is not subject to judicial review

here and, regardless, remand is improper because (1) it is immaterial, and (2) its production is

untimely and without good cause.  *See* Resp.'s Brief, pp. 14-16 (Docket No. 22).

*1.     Judicial Review*

Although the Ninth Circuit has not expressed any opinion on whether this Court may

review an Appeals Council's non-final administrative decision to deny review, other courts have

agreed with Respondent that such review is not permitted.  *See Woodsum v. Astrue*, 711 F. Supp.

2d 1239, 1248 (W.D. Wa. 2010) (adopting other courts' rejection of judicial review of Appeals's

Council's decision to deny review in Social Security context).  However, those other cases

*presumed* (or, actually, determined as a matter of fact and/or law) that the Appeals Council

complied with 20 C.F.R. § 404.970 – addressing those situations involving new evidence

submitted to the Appeals Council for the first time.  Of particular importance here, 20 C.F.R.

§ 404.970(b) states:

> If new and material evidence is submitted, the Appeals Council . . .
> shall evaluate the entire record including the new and material

**MEMORANDUM DECISION AND ORDER - 18**

> evidence submitted if it relates to the period on or before the date of
> the administrative law judge hearing decision.  It will then review the
> case if it finds that the administrative law judge's action, findings, or
> conclusion is contrary to the weight of the evidence currently of
> record.

*See* 20 C.F.R. § 404.970(b).  While Respondent states matter-of-factly that the Appeals Council

"considered Petitioner's request for review of the ALJ's decision and the post-decision

evidence" (*see* Resp.'s Brief, p. 13 (Docket No. 22)), an actual examination of the "Notice of

Appeals Council Action" reveals a less certain reality, stating only: "In looking at your case, we

considered the reasons you disagree with the decision.  We found that this information does not

provide a basis for changing the Administrative Law Judge's decision."  (AR 1-2).  In other

words, there is no reference to Petitioner's new evidence and although the Appeals Council's

otherwise seemingly boilerplate language may be intended to subsume anything and everything

provided to it by the Petitioner, it nonetheless remains unclear as to whether the Appeals Council

actually considered that new evidence.  *See, e.g.*, *Woodsum*, 711 F. Supp. 2d at 1250 ("That is,

there is no indication in *Newton* that the failure of the Appeals Council consisted of anything

other than the Appeals Council's failure to actually note it addressed that evidence.").

Moreover, even when assuming the Appeals Council actually considered Petitioner's

new evidence as Respondent contends, *Woodsum* suggests that this Court can still conduct

"judicial review" of the new evidence anyway.  *See id*. at 1245 and 1250 (conducting "[j]udicial

[r]eview of the [a]dditional [e]vidence [s]ubmitted to the Appeals Council," concluding:

"Although the Appeals Council committed no error as argued by plaintiff, the undersigned finds

remand for further proceedings is warranted in part due to the statements contained in the

letter."); *see also* Resp.'s Brief, pp. 14-15 (Docket No. 22) ("Although a federal court may not

**MEMORANDUM DECISION AND ORDER - 19**

review the Appeals Council's denial of review, the court may consider the evidence and decide whether to remand the case for further agency consideration of such evidence.").

Therefore, the Court is not foreclosed from remanding this action even if based strictly on the fact that the ALJ's decision constitutes the final decision of the Commissioner.  Questions still remain as to whether the Appeals Council fulfilled its duties and, separately, a judicial review of the evidence itself (distinct from the Appeals Council's decision) appears warranted under case law from within the Ninth Circuit.

2.      *Immateriality and Good Cause*

Respondent argues that this Court's review of the FCE and IME is improper because, under 42 U.S.C. § 405(g), a federal court may order an administrative law judge to consider evidence newly presented to the Appeals Council only if such new evidence is material and good cause has been shown for the failure to present it to the administrative law judge prior to his or her decision.  *See id*. at pp. 14-16.

Under 20 C.F.R. § 404.970(b) – the standard applicable to the proper procedure for the Appeals Council to follow in deciding whether to review a case in the light of the submission of new evidence (*see supra* at pp. 18-19) – there is no "good cause" precondition as Respondent suggests; rather such a standard applies under 42 U.S.C. § 405(g) to new evidence submitted for the first time to the *district court*.  *See Brent v. Astrue*, 2010 WL 3521788, *5 (C.D. Cal. 2010) ("While Section 404.970(b) dictates the proper procedure for the Appeals Council to follow in deciding whether to review a case in light of the submission of new evidence, Section 405(g) – which, unlike the aforementioned regulation, requires a showing of 'good cause' for the belated submission of new evidence – governs 'judicial review' of new evidence *submitted for the first*

**MEMORANDUM DECISION AND ORDER - 20**

*time to the district court*.  This Court will not superimpose the 'good cause' requirement of

Section 405(g) onto the Appeals Council's review of new evidence pursuant to Section

404.970(b)." (Emphasis in original, internal citations omitted)).

Focusing on the "materiality" standard, then, "the new evidence must bear 'directly and

substantially on the matter in dispute.'" *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001).[5]

Petitioner's new evidence is sufficiently material, particularly when recognizing that a basis for

the ALJ's decision involved an "assessment of the opinion evidence" concerning Petitioner's

conditions.  (AR 105).  In addition to opinion evidence available to the ALJ at the time of the

hearing, the FCE addresses Petitioner's "pain report", "quality of movement", and "limitations

(AR 11-45); likewise the IME discusses Petitioner's "diagnoses", "impairments", "prognosis",

and "work capacity" (AR 5-10).  These latter materials were not available to the ALJ when

considering Petitioner's claims for disability and, had they been, could have affected the ALJ's

determination.  *See, e.g.*, *Woodsum*, 711 F. Supp. 2d 1239; *Brent*, 2010 WL 3521788.

The Court therefore orders remand on this discrete issue only.  On remand, the

Commissioner must conduct such further administrative proceedings as are necessary to

determine the effect of the FCE and IME on Petitioner's RFC and his ability to perform any

work other than his past relevant work.  The Court expresses no opinion on whether that

assessment should occur at the Appeals Council level or whether the matter should be remanded

to the ALJ.  *See Brent*, 2010 WL 3521788 at *6.  However, it would seem more suitable for the

ALJ's docket, and the Court would suggest that the parties stipulate to a particular course in that

---

[5]  On the issue of good cause (*see supra* at pp. 20-21), the Ninth Circuit in *Mayes*
expressly stated it had not determined if such a showing was required in regard to evidence
submitted for the first time to the Appeals Council.  *See Mayes*, 276 F.3d at 461 n.3.

**MEMORANDUM DECISION AND ORDER - 21**

regard, so as to prevent further delay in what has already been an extraordinarily time-consuming case.

## IV.  CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility.  *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, the Court may not substitute its own interpretation for that of the ALJ.  *Key*, 754 F.2d at 1549.

As to the ALJ's specific determination (based upon the information available to him at the time of the hearing) regarding the extent of Petitioner's impairments and Petitioner's credibility, the evidence upon which the ALJ relied can reasonably and rationally support his well-formed conclusions, despite the fact that such evidence may be susceptible to a different interpretation by others.

However, the FCE and IME now present outstanding issues that must be resolved before a determination of disability can be made.

///

///

///

///

///

///

///

**MEMORANDUM DECISION AND ORDER - 22**

## V.  ORDER

Based on the foregoing, Petitioner's request for review is GRANTED, and this case is

REMANDED for further proceedings consistent with this Memorandum Decision and Order.

DATED:  **September 28, 2011**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 23**